BANGOR & PISCATAQUIS RAILROAD COMPANY, petitioners, *vs.*
WILLIAM McCOMB.

*Damages for land taken for a railroad—elements of.*

In estimating the damages of a land-owner, for the taking of a strip of his land across his lot for the location of a railroad, the award must be restricted to the direct injuries to the lot in question.

Thus a sheriff's jury may consider the value of the land taken; and if the remainder of the lot is rendered less valuable by reason of being severed, or disfigured on account of the strip taken and the use made of it, they may allow such sum as they find the injury to be: and in determining the consequent depreciation of the lot, they may consider the use to which the strip taken is appropriated; the character, situation, present and probable use of the remainder of the lot; the distance of the owner's buildings from the location of the railroad; and any facts which the jury, from a view and the testimony, shall find injure the value of the premises by a proper and legal use of the road.

So, also, they may consider all inconveniences from the sounding of whistles, ringing of bells, rattling of trains, jarring of the ground, and from smoke, so far as they severally arose from the use of the strip taken and upon it, excluding all common and indirect damages.

So, also, if they find that the real value of the remainder of the lot and of the erections thereon was actually diminished, by exposure to fire from the company's locomotives, they may assess such sum as will be a just compensation for such diminution, taking into consideration, at the same time, that by the statute if property is injured by fire communicated by a locomotive engine, the company using it is absolutely responsible for such injury.

Bangor and Piscataquis R. R. Co. v. McComb.

On motion by the petitioners to set aside the verdict of a sheriff's jury for damages for land taken for the location of a railroad, the presiding judge declined to hear witnesses known to the petitioners and obtainable at the trial before the jury, or which by ordinary diligence might have been known to and had by them at the trial; *Held*, to be no ground for exceptions.

This court will not set aside the verdict of a sheriff's jury upon the ground of excessive damages, when the chief evidence relating thereto was derived by the jury from a view of the premises.

The owner of land taken for the location of a railroad is entitled to interest on the amount of the damages, from the time of the taking to the time of the assessment.

ON EXCEPTIONS AND MOTION.

PETITION for diminution of damages, allowed by the county commissioners for this county to the respondent, for land duly taken by the petitioners for the location of their railroad, and on appeal heard and tried before a sheriff's jury, summoned and impanelled for that purpose on Jan. 23, 1872.

It appeared that the jury proceeded with the officer, parties, and counsel to, and viewed the premises when the respondent put in his title deeds; that the petitioners had taken one hundred and fifty-one and one-half rods of the respondent's land, and that his entire premises, out of which the strip of land was taken, contained seven acres and fifty-three rods.

No question was made as to the title to the land, or to the charter and location of the road.

The parties then agreed that the question of damages should be submitted to the jury upon the foregoing testimony and their view, without argument, under instructions as to matters of law from the officer presiding, S. D. Lindsey, Esq., who thereupon instructed the jury

'That Mr. McComb was entitled to damages from the railroad company for his land so taken; that these damages included the value of the land taken, and the direct injury to the land remaining by the taking and use of this portion.

'That it was proper for the jury to consider the value of the land taken and its effect upon the remaining land. And if the remaining land is less valuable by reason of being severed, or by

any disfigurement on account of the land taken and the use made of it, they should allow such sum as they find the injury to be.

'In determining whether the remaining land was lessened in value, they should consider the use to which the land taken is appropriated, and the character, situation, present and probable use of the lands remaining; the distance of the owner's building from the location of the road, and any other facts, which, from their view and the testimony, they should find injured the land by the use of the road in a proper and legal manner.

' The question may arise, whether they should consider the exposure of the remaining lands to fire from the company's engines as an element of damage.

' Where the common law governs, the corporation is only responsible for the exercise of reasonable care and skill, and conditions might exist where this element would enter into the estimate of damages.

' In this State, the statute provides that when a building or other property is injured by fire communicated by a locomotive engine, the corporation using it are responsible for such injury. The intention of the law being to require the railroad company to so run their trains that no fire shall be communicated to property along the route from their engines. If fire, in fact, is communicated, then the corporation is responsible.

' The jury may be satisfied as matter of fact, that as engines are now constructed and used, fire may be, and sometimes is, set by them, and that property along the line is subject to risk. The owner is entitled to just compensation for his actual damage. '

' In this case they might consider the situation of the remaining lands, and by the term lands are included the buildings and erections on them. And if they find that their real value is actually lessened by exposure to fire from the company's locomotives, taking into consideration at the same time, that if a fire does occur, that the company must pay the damage, they may assess such sum as will be a just compensation for such lessened value. The requirement being that the land-owner shall receive a just compen-

sation for the direct damage growing out of the taking of his land for this purpose. If the real value of the land immediately before and after the location of the road could be ascertained, the difference between these two sums would be the damage.

'The market value of the land at the times mentioned is, perhaps, the nearest approximation to its real value, and they may consider the diminution of its market value by the location of the road over it, excluding, however, any general depreciation of lands, by reason of the extension of the road, which affected all lands in the village and neighborhood. It is the direct depreciation of this land, in consequence of the location of the road over it, that is to constitute your measure of damages.

'Merely speculative and conjectured damages are not to be considered. They must assume that the corporation will perform its obligations and operate their road in conformity to the requirements of law.

'In estimating these damages, they will take counsel of their own experience and knowledge of like subjects, and their view of the premises, and such testimony as has been offered. They will determine what was the actual damage sustained by Mr. McComb by the location of this road over his land.

'That the jury should allow interest on the sum they found the damages to be from that time.'

The presiding officer was requested by the counsel for the railroad company to give the jury the following instructions:

'1. That for all inconvenience arising from the sounding of whistles, the ringing of bells, the rattling of trains, the jarring of the ground, and for smoke, which are common to all the inhabitants and proprietors along the line of the railroad, no damages can be assessed by the jury in this case.

'2. That in this case they are not authorized to assess any damages for the prospective damages from fire, which may be communicated by the locomotive engines of the corporation to the property of the claimant McComb.

'3. That any insufficiency or want of culverts or cattle passes are not matters which can be redressed in this verdict.'

The first requested instruction the presiding officer declined to give, except as already covered in the instructions given, remarking to the jury that 'the inconveniences named in the requested instruction, to constitute elements of damage in this case, must be the direct result of the location of the road over the premises in question; that whistling, ringing of bells, etc., at a distance, and which constituted a common annoyance, was not to be considered.'

The second requested instruction the presiding officer also declined to give, further than the same was covered by the general instructions already given, relating to fires.

The third requested instruction was given.

The jury found a verdict for the sum of $1,750 and interest, which was sealed and returned to the February term, 1872, of the court, and opened on the second day thereof. Whereupon the petitioners alleged exceptions and moved that the verdict be set aside,

1. Because it was against evidence and the weight of evidence;

2. Because it was against law; and

3. Because the damages were excessive.

The petitioners objected to the acceptance of the verdict and report because the law, as given to the jury by said presiding officer, was wrong, and caused a large measure of damages against said company; and said presiding officer should have given the required instructions.

The petitioners offered witnesses to prove that the verdict of the jury as to damages was excessive. The presiding judge, upon the hearing as to the motion to set aside the verdict, ruled that he would not receive witnesses to affect the questions which were known to the petitioners, and obtainable by them at the trial before the jury, or which with ordinary diligence might have been known to them, and had by them at the trial.

The presiding judge, *pro forma*, overruled the motion for a new trial, his ruling not to affect the rights of the parties to be heard upon that question before the full court.

*A. M. Robinson,* for the petitioners, cited R. S., c. 51, § 32; *Hart* v. *Western R. R. Co.*, 13 Met. 99; 1 Redf. on Railways, 334; *Mason* v. *Ken. & Port. R. R. Co.*, 31 Maine, 215; *Stowell* v. *Flagg,* 11 Mass. 364; *Stearns* v. *At. & St. L. R. R. Co.*, 46 Maine, 114, 115; *Prop. of Locks and Canals* v. *Nash. & Low. R. R. Co.*, 10 Cush. 385; 1 Redfield on Railways, 291, 292, and cases cited; *Holman* v. *Townsend*, 13 Met. 299.

*Josiah Crosby,* for the respondent.

KENT, J. The questions presented for our determination in this case arise from exceptions to the rulings of the presiding officer, at a hearing before a sheriff's jury, impanelled at the request of the petitioners. There is also a motion to set aside the verdict on the ground of excessive damages, and exceptions to the ruling of the judge of this court in refusing to hear certain testimony offered under that motion.

The first and principal question of law relates to the rule of damages given to the jury, touching the various aspects of the case. It is conceded that the respondent's land was taken, to be used for the track of the railroad. It is a case where private property has been taken for public uses, without the consent of the owner, because the public exigencies required such taking.

This exercise of the right of eminent domain is, in its nature, in derogation of the great and fundamental principle of all constitutional governments, which secures to every individual the right to acquire, possess, and defend property. As between individuals, no necessity, however great, no exigency, however imminent, no improvement, however valuable, no refusal, however unneighborly, no obstinacy, however unreasonable, no offers of compensation, however extravagant, can compel or require any man to part with an inch of his estate. The constitution protects him and his possessions, when held on, even to the extent of churlish obstinacy.

It is only when the sovereign power declares that a public exigency, to carry out a public purpose, requires that the individual right to possess must yield to the higher demands of the sovereign

power, that private property can be taken without consent. And even this right to take is not affirmatively given in the bill of rights, but is necessarily inferred. The section first gives an emphatic protection to private property, even against the public and the sovereign,—'private property shall not be taken.' It then qualifies this absolute negation, by excepting the cases where a public purpose and a public exigency concur in requiring or justifying the exercise of the right of eminent domain.

But can this right be exercised absolutely, tyrannically, and without care for the rights of the owner ? Can the public say, we need your property and therefore we take it, and you must submit to be a victim for the public good, and yield your property for the common benefit? The constitution asserts no such right. No government, short of the most absolute tyranny, ever did, or ever can, maintain or tolerate such a doctrine.

The third and most expressive condition is, that private property shall not be thus taken ' without just compensation.' It is with this provision that we have to deal in this case. But in considering the extent and meaning of this clause it is important to regard the whole provision. We are not to forget that the property has been taken without consent of the owner; that the act overrides the fundamental right of every man to possess, manage, and defend his property, and that it is enough thus to seize his estate without making him a pecuniary sufferer.

The words selected are significant,—'just compensation.' These words cover more than the mere value of the quantity taken, measured by rods or acres. They intend nothing less than to save the owner from suffering in his property or estate, by reason of this setting aside of his right of property,—as far as compensation in money can go,—under the rules of law applicable to such cases.

In some cases it is very easy to apply those rules. If it is clear that all of a lot of land, shown to have been worth two thousand dollars, was taken, then that sum would be the extent of the damage. If personal property is taken from the possession of the

owner and converted to the use of the public, the value of the thing taken, at the time of the taking, would be the just compensation required. If a man's horse is taken and it goes from his possession, he has no longer any connection with the subsequent use or appropriation of the property. It can no longer affect him in the use or value of his remaining property.

· But not so with land, unless the whole lot is taken. The land remains unmoved, and in various ways the taking of a part may injure the former owner beyond the mere value of so much land.

The effect of the location of the part taken, upon the remaining portion, may be such as to render it of very little value. It may leave only small gores, or parts incapable of profitable use. Or it may disfigure the lot, so that it would be worth but little, although the extent of the part remaining might be greater than of the part taken. Another, and often a more serious injury, is in the use to which the land taken is to be appropriated. If for a common highway, the use might be much less injury to the remaining land, than if for a railroad. There are various considerations, applicable to different cases, and to the situation of different lots, which may properly be regarded in determining the just compensation to the owner. The constitutional provision cannot be carried out, in its letter and spirit, by anything short of a just compensation for all the direct damages to the owner of the lot, confined to that lot, occasioned by the taking of his land. The paramount law intends that such owner, so far as that lot is in question, shall be put in as good a condition, pecuniarily, by a just compensation, as he would have been in if that lot of land had remained entire, as his own property. How much less is that lot, and its erections thereon remaining, worth to the owner, as property to be used or leased or sold the day after the part was taken, to be used for the purpose designed, than the whole lot intact was the day before such taking?

There must be, however, a limit, which will exclude remote, indefinite, or possible damages. The damages must be direct, not such as are general or common to others or to the whole communi-

ty.    They must be such as it may be fairly anticipated will result from the taking of the land, in the form, direction, and use of the track or road taken to the remaining part, and to the erections thereon.

Although it might be difficult to exclude from the enlarged idea of a 'just compensation,' some of those damages which are termed indirect, yet the difficulty of estimating them, and the almost unlimited range which such a discussion must take, and the impossibility of justly giving damages for such indirect, remote, or general injuries, when one man's land is taken, and refusing them to his neighbor who may be an equal sufferer in fact, from the proximity of his premises, no part of which is taken for the road, have led to the conclusion that the only practicable rule is, to confine the award to the direct injuries to the lot in question.

On a careful examination of the rulings of the presiding officer on these points, we see no reason to question their fulness or correctness.    The jury were told ' to allow the value of the land taken, and if the remaining land is less valuable by reason of being severed or by any disfigurement on account of the land taken and the use made of it, they should allow such sum as they find the injury to be.    And that in determining whether the remaining land was lessened in value, they should consider the use to which the land taken is to be appropriated, and the character, situation, present and probable use of the lands remaining, the distance of the owner's buildings from the location of the road, and any other facts, which, from their view and the testimony, they should find injured the land, by the use of the road in a proper and legal manner.'

The jury were instructed to exclude ' merely speculative or conjectural damages, and that they must assume that the corporation will perform its obligations and operate their road in conformity with the requirements of law.    The direct depreciation of this land in consequence of the location of the road over it, is to constitute your measure of damages.'

The corporation requested the instruction, that the jury ' are not

authorized to assess any damages for all inconvenience arising from the sounding of whistles, the ringing of bells, the rattling of trains, the jarring of the ground and for smoke, which are common to all the inhabitants and proprietors along the line of the railroad.'

The presiding officer instructed the jury that the inconveniences named in the request, to constitute elements of damage in this case, must be the result of the location of the road over the premises in question. That the whistling, ringing of bells, and other matters named, at a distance, and which constituted a common annoyance were not to be considered.

We understand that the fair meaning of this instruction is, that these matters off of the premises in question, at any distance therefrom, must be excluded from consideration. But the jury might consider them, when arising from the use of the land taken, and on that land.

No one can seriously question that many, if not all, the matters specified in the request may be specially annoying to the owner in the use of his property. The track may be so near his house that smoke may enter it every time the engine passes. His house may be at the exact distance from a crossing, which the law designates as the place where the whistle shall be sounded with its shrill cry. If the jury might properly consider the use to be made of the land, then all the natural, usual, and lawful results from that use may be considered, when restricted to the lot itself. A common nuisance, which annoys the whole neighborhood, may also be a private and special nuisance to an individual, beyond that endured by the public.

We see no ground to except to this instruction, qualified as it was in the giving, and also qualified by a reference to the former part of the charge, by which all common and indirect damages were excluded.

There was another instruction, which it is contended more strenuously and confidently, was erroneous.

The instruction was, that if the jury find that the real value of the remaining land, and buildings and erections thereon, is actually

lessened by exposure to fire from the company's locomotives, taking into consideration at the same time, that if a fire does occur, that the company must pay the damage, you may assess such sum as will be a just compensation for such lessened value.

The presiding officer had, before giving this rule of damage, stated to the jury, that by the existing law of this State the corporation was absolutely liable for all injury occasioned to property of others by fire, communicated by a locomotive engine, in use by the company.

In fact and substance the company is an insurer against such injury, and bound to repair, restore, or pay the amount of such injury so occasioned.

It is not questioned seriously, that independent of this statute, the danger from fire from the use of locomotives, over the land taken, would be a proper subject for consideration by the jury in estimating the damages. But it is contended that the liability of the corporation, before stated, covers all the ground, and that there can be no appreciable damage beyond this insurance.

It must be confessed that, at first view, this position seems reasonable and tenable. But a little consideration of the elements which go to make up the just estimate will show that there are reasonable grounds on which the ruling may be sustained. The rule contended for is simply the increased cost of insurance as the only allowable damage. If before, the buildings could be insured for one per cent per annum, and after the location two per cent would be demanded, then the additional premium would be the exact injury, in this particular. But we are to remember that the question is, how much is the lot and property injured, depreciated, as property to be used, leased, or sold. The actual injury, in these particulars, is to be settled at once and for all time. The right to call upon the company to restore the building, if burned, or to pay its value, may, it is true, go far to protect the owner from pecuniary loss. But are there not other evils, other depreciating effects from a constant and imminent danger of fire, causing not merely mental anxiety, but constant watching and loss of time.

There may be cases where property which before could be leased for a large rent, to responsible tenants, would be left unoccupied by such tenants, if daily and nightly in danger of being set on fire by locomotive engines. And the same effect would follow, if offered for sale. In such cases the mere liability to pay the actual physical damage to the property would not be a just compensation. It would not cover the actual depreciation of the property occasioned by this liability to fire. There may be cases where perhaps this insurance would, in the sound judgment of a jury, be a sufficient protection. But the question is, whether there may not be cases where the rule given in this case is the proper one.

To illustrate further. If the sovereign power should determine that the public exigency required the erection, by the State, of works for the manufacture of gunpowder, and should designate a commission to select a site, and take the same under the right of eminent domain, a just compensation to be paid to the owner, and with the express provision that if any injury should be done to any of the buildings or erections on the remaining part of the lot, by an explosion of gunpowder there manufactured or in any stage of manufacture, the injury done to such property should be repaired or paid for by the State, would this provision be regarded by any impartial tribunal as excluding from consideration, in determining what should be a just compensation to the owner, the constant and imminent danger of an explosion? The prospective right of repair would hardly induce an owner or his tenant to live contentedly and with a feeling of security, with this hourly fear of an explosion.

The jury were instructed to start in this matter of danger from fire, with the established fact that if a fire does occur, from the use of locomotive engines, the company are liable for the damages actually done to the buildings. With this admitted, we see no objection to the rule given by the presiding officer.

The court in Massachusetts, in the recent case of *Pierce* v. *W.*

*& N. R. R.*, 105 Mass. 199, recognize the correctness of the rul-
ing of the presiding officer in this case.  He instructed the jury
clearly and distinctly, that they could not estimate or allow any-
thing equivalent to insurance against actual damage or destruc-
tion by fire, occasioned by a locomotive engine of the company.

There remain for consideration the exceptions to the rulings of
the judge of this court, at the hearing on the motion to set aside
the verdict of the jury, and for a new trial.

As we gather the facts from the somewhat complex and confus-
ed statement of them, these proceedings originated in a petition by
the railroad company for a diminution of damages, allowed by the
county commissioners.  The verdict of the jury was returned into
court, and thereupon the company moved to set it aside and for a
new trial.  The presiding judge ruled that he would not hear wit-
nesses, whose testimony might affect the questions before him, if
such witnesses were known to the petitioners, and obtainable by
them at the trial before the jury, or which by ordinary diligence
might have been known to them and had by them at the trial.

In thus ruling the judge only followed well-settled rules of prac-
tice in this court, which are reasonable and require no words in de-
fense.

The motion for a new trial was overruled, but it is added that
this *pro forma* ruling is not to affect the rights of the parties to be
heard upon that question before the full court.

It is not necessary for us to say more than if that motion is
properly before us, we can find no ground to sustain it, on the facts
reported.  The chief, if not the whole evidence touching the mat-
ter of damages was derived from the view of the premises.  The
parties agreed to submit the case to the jury on this view.  We,
of course, cannot have the benefit of this kind of evidence.

The jury were instructed to allow interest on the damages found,
after the time when the land was taken by the corporation.  We
see no legal objection to this rule.  The respondent's land was
taken from him and his compensation has been detained from him

by the acts and proceedings of the corporation.    *Reed* v. *Hanover*
*B. Railroad*, 105 Mass. 303.    The result is, that

> All the exceptions before us are overruled.
> Motion overruled.   Judgment to be ren-
> dered on the accepted verdict of the
> jury.

APPLETON, C. J.; CUTTING, WALTON, BARROWS, and TAP-
LEY, JJ., concurred.