**INTERNATIONAL PAPER COMPANY**
et al.

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Dec. 26, 1968.

Pierce, Atwood, Scribner, Allen & Mc-Kusick, by Ralph I. Lancaster, Jr., Portland, for plaintiffs.

Paul G. Creteau, Maine State Highway Commission, Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and DUFRESNE, JJ.

WEBBER, Justice.

The State Highway Commission condemned approximately 746 acres of plaintiffs' land for highway purposes. The highway as constructed passed through and divided the township owned by plaintiffs and comprising 23,538 acres of timberland. It is not disputed on appeal that the highway is of the non-access type where it abuts land of plaintiffs. Plaintiffs therefore claim the value of the property actually taken plus severance damage as to the rest. Defendant's appeal is from a jury verdict awarding plaintiffs the sum of $65,000.

The statement of points on appeal, not abandoned, raise the following issues for determination:

1. Whether the Court erred in permitting Morris Wing to testify in regard to market value and damages, and in refusing to strike his testimony.

■■■ Mr. Wing is the "Regional Manager of Woodlands" for plaintiff International Paper Company with responsibility for the supervision of more than a million acres of timberland in three states. He was permitted over objection to express his opinion with respect to the fair market value of the entire tract before and after the taking. In the course of a careful examination, both direct and cross, he displayed qualifications derived from training and experience that would enable him to form an expert opinion with respect to the value of timberlands. He was intimately acquainted with the land in question and was familiar with the market for timberlands in Maine and with comparable sales of large timberland properties. His capacity as an expert witness was not unlike that of the shareholder of plaintiff corporation in F. X. Bilodeau Realty, Inc. v. Lewiston Urban Renew. Authority (1968) 237 A.2d 398 (Me.), and that of the president of the

plaintiff corporation in Knox Lime Company v. Maine State Highway Comm. (1967) 230 A.2d 814, 827 (Me.). In each of these cases the witness satisfied the requirements of special knowledge and experience entirely apart from his capacity as owner or officer of the claimant company. The determination of admissibility is within the sound discretion of the presiding Justice and on the basis of the qualification evidence here presented there was no abuse of that discretion. The weight to be given to the opinion of the expert witness is for the jury, and this jury was so instructed.

The motion to strike all of Mr. Wing's testimony made at the close thereof was predicated on his use of a stumpage "inventory" maintained by International. Since the same issue is raised with respect to the testimony of witness Richard Sawyer, discussion of the point is deferred. Suffice it to say that the value placed by Mr. Wing on stumpage was only one factor used by him in his determination of the fair market value of plaintiffs' land.

2. Whether the Court erred in allowing Richard Sawyer to testify in regard to market value and damages and in refusing to strike his testimony.

Mr. Sawyer's qualifications as an appraiser of timberlands and as an expert witness with respect to their fair market value are not challenged. What is asserted here by the State is that the witness improperly relied on hearsay information in forming his opinion and that he erroneously employed what the State describes as a "multiplication method" to arrive at the fair market value of the land.

The evidence discloses that although he did not "cruise" the area, he spent one day and part of another inspecting it; that he had available and made use of the right-of-way plans of the taking area, aerial photographs, forest growth type maps, and U.S. Geodetic Survey topographical maps; and that he had a cruise made of the "taking area" for his use. He was familiar with the market for timber in the area and obtained information from buyers and sellers with respect to comparable sales. The State's primary attack on his testimony stems from his use of International's stumpage "inventory" to which we have already referred. This "inventory" began with a cruise of the area made by employees of the "forest engineer department" of International in 1949. The cruise information was checked against aerial photographs made annually and the remeasuring of plots every five years. The amount of cut was scaled on the ground year by year. By estimating growth and subtracting the cut, International was able to maintain a current "inventory" of both growing and merchantable stumpage. The witness, having determined from an examination of the market that there is an identifiable relationship between the value of the standing timber on timberland and the fair market value of the land as enhanced by the timber, used the "inventory" as one factor in arriving at fair market value of the land. Although the "inventory" information was hearsay and not itself admissible on direct examination in proof of value, it was a proper matter for consideration by the expert in forming his own opinion of market value of the land.

In Warren v. Waterville Urban Renewal Authority (1967) 235 A.2d 295, 300 (Me.) we said:

"The opinion of an expert is not necessarily rendered inadmissible or incompetent because it may be based on knowledge of facts gained from hearsay sources. Any expert worthy of the name must of necessity assimilate prior learning derived from the experiences of others. As an expert witness he draws upon various sources of information whose credibility or trustworthiness he must determine in the light of his expertness. It would completely frustrate the use of expert witnesses if they were obliged to substantiate each single factor upon which their ultimate opinion must depend upon firsthand personal knowledge or personal experience. If some of

the expert's factual information is derived *from sources fairly trustworthy though hearsay and he has as such the ability to coordinate and evaluate that information* with all the other facts in his possession secured through personal observation, the trial court may in the exercise of a sound discretion permit the expert's ultimate opinion to be considered by the jury." (Emphasis supplied)

So also we said in *Knox Lime Company,* supra at page 827 of 230 A.2d, "While as we have said, a valuation based upon a multiplication of these elements is so speculative that it must be rejected, such facts themselves may be considered by the knowledgeable expert and by the court and jury, as may any advantageous or disadvantageous situations as to production or marketing, but 'only as contributing factors to the ascertainment of market value rather than as the criterion thereof.' "

 So here the witness had the capacity to judge the validity of the "inventory" method employed by International and to check the results against his own observations, examination of aerial photographs and the like. That he accepted "inventory" figures with respect to quantity of standing timber, nature, type and extent of growth, stand per acre and the amount of cut over and non-productive land does not render his ultimate opinion as to the fair market value of the entire property before and after the taking inadmissible. It was but one of a number of factors which aided him in forming an opinion. It may be properly noted that this "inventory" was maintained by International for many years prior to the taking, not in anticipation thereof, but for the orderly management and control of its own operations. As such, it was more than ordinarily trustworthy as a hearsay factor to be considered by the expert. We see here no departure from the rules governing proper use of hearsay factors by expert witnesses as clearly recognized and defined by *Warren* and *Knox.* It is significant that the "in-ventory" itself was not offered in evidence on direct examination. As independent probative evidence it would presumably have been excluded under the hearsay rule at that stage. *Knox Lime Company,* supra. Common sense dictates, however, that the willing seller of timberland property and the willing buyer thereof will take into account what they deem to be the fair market value of the standing timber thereon in determining what is a fair price for the land on which the timber stands. This is precisely what both expert witnesses for plaintiffs did in this case. The State's position that the witnesses did no more than to take International's "inventory" and multiply the quantity by the going price of stumpage in order to produce a value of the entire property is not supported by the evidence. No error is shown.

3. Whether the Court erred in refusing to grant defendant's motions for a directed verdict.

 A motion for a directed verdict for the defendant was made at the close of plaintiffs' case. It was not renewed at the close of all of the evidence. The point is not saved on appeal. M.R.C.P. Rule 50. Field & McKusick, Maine Civil Practice, Page 408, Comment 50.1. Defendant is not prejudiced by this ruling. There was credible evidence which, if believed by the jury, would support the verdict.

4. Whether the Court erred in refusing to grant defendant's request for a jury view.

 This was a matter of judicial discretion. The Justice below took into account the considerable distance the jury would have to be transported, the time of year and the very limited opportunity which the jury would have to observe a tract of land comprising over 23,000 acres. He was mindful of the fact that activities were going on at the scene which might mislead the jury with respect to the right of access after the taking. The exercise of discretion was soundly based.

5. Whether the Court erred in refusing to remove for cause jurors who had had land taken from them by eminent domain.

■ The only juror to whom this point could have any possible application stood indifferent in the cause and there was no occasion for removal. 14 M.R.S.A. Sec. 1301. When the jury was finally empaneled, the juror in question had been peremptorily challenged by the defendant. Nevertheless, defendant still had one unused peremptory challenge remaining. The point is without merit.

6. Whether the Court erred in refusing to allow the defendant to elicit through cross-examination the fact that witness Richard Sawyer had previously testified under oath to a damage figure of $20,000 less than his testimony at the trial.

■ The limits of proper cross-examination are within the sound discretion of the presiding Justice and on review we look only to see whether or not there was any abuse of that discretion. The record discloses that both the witness Sawyer and the prinicpal expert witness for the defendant had testified at a prior hearing before the Land Damage Board giving lower estimates of damage than those they gave at trial. Their opinions at the prior hearing, however, were predicated on the assumption that plaintiffs would after the taking have some direct access from their land to the new highway. At trial they were required to base their opinions on a new assumption stemming from a ruling of the Court that as a matter of law no such access would exist. There must be a "real inconsistency." Wigmore on Evidence (3rd Ed.) Vol. III, Page 725, Sec. 1040. The situation is not unlike that which would have existed if the witness had on a prior occasion given an opinion based on a taking in a different location creating different conditions and different elements of damage from those which later developed. To classify such a prior opinion as "inconsistent" would be basically unfair. The Court was justified in eliminating this element of unfairness and at the same time avoiding a situation in which the jury might have been misled or confused. The defendant was in no way prevented from revealing the existence of genuinely "inconsistent" prior testimony, if in fact any had ever been given. The defendant made no offer of proof and the colloquy in no way suggests that witness Sawyer had ever expressed different opinions as to damage predicated upon the same assumptions as to the effect of the taking on access. The proposed questions in cross-examination were properly excluded.

7. Whether the Court erred in refusing to give additional instructions to the jury requested by the defendant.

■ M.R.C.P. Rule 51 provides for the presentation and disposition of requested instructions. The Rule states in part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

At the close of the evidence the defendant presented four unnumbered instructions dealing generally with the use of the so-called "multiplication method" of arriving at value and with the proper use of comparable sales, market value and the like. The presiding Justice fully and correctly charged the jury that the test was not the fair market value of the stumpage but rather the fair market value of the land enhanced by the presence of timber thereon. He eliminated the "multiplication method" as a direct means of determining the fair market value of the land either before or after the taking. He left it to the jury to determine whether or to what extent the value of the land was enhanced by stumpage. After these instructions had been given and before the jury retired, the defendant offered only one objection in conformity with Rule 51. This objection related, not to the matter covered by the requested instructions, but to an instruction

relating to non-access. Since the points of appeal relating to access have been expressly withdrawn and abandoned, no point relating to instructions is properly before us. We may fairly assume that defendant treated the instructions given as substantially and accurately stating the law with respect to the subject matter of its requested instructions.

The entry will be

Appeal denied.