**TIMBERLANDS, INC.**

v.

**MAINE STATE HIGHWAY COMMISSION.**

Supreme Judicial Court of Maine.

Dec. 27, 1971.

McLean, Southard, Hunt & Lipman by Frank E. Southard, Jr., Augusta, for plaintiff.

Ronald M. Roy, Winslow, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On May 29, 1968 the Maine State Highway Commission took in eminent domain proceedings two small parcels of timberland abutting Route 27 in New Portland. The easterly plot was 1.16 acre in area while the westerly piece was just below 3 acres, to wit, 2.99 acres. Prior to the taking the plaintiff owned 32 acres of land to the east of the highway while it had 33½ acres on the west side. The parties stipulated that no severance damage was caused to the remainder of plaintiff's holdings by reason of the State's acquisition of either strip of land. Plaintiff appeals from a jury verdict in its favor in the amount of $550.00.

Two points of error are raised on appeal, 1) the Court's order that the fair market value of the land taken as expressed by plaintiff's expert witness, Mitchell, be stricken and its implementing instruction to the jury not to consider his opinion at all as it relates to fair market value, and 2) the further Court instruction to the jury that "you are not allowed or permitted to multiply the estimated stumpage by a unit price to arrive at the fair market value." We sustain the appeal.

Ray Mitchell, a person with 40 years of experience in measuring, scaling and cruising in connection with timberland operations, and vice-president of a business involving the manufacture of wood dowels and wood parts, testified for the plaintiff as one of its experts on market value of plaintiff's land taken by the State. He was permitted to develop without objection in direct examination that he was familiar with timberland values in the general area by reason of his extensive purchases of wood lots for his Company; that at the request of the plaintiff he had cruised the two pieces of timberland involved in the taking and estimated there were 30 cords of white birch and 75 cords of hardwood pulp; that he had counted 210 trees which in his opinion on the basis of 7 trees per cord would result in 30 cords. He further stated that the land had a value for the growing timber and that it was worth at least the stumpage, conceding that there would remain a residual value after the stripping due to the present value of leftover immature growth. He was not allowed to give the stumpage value, but he was permitted to express his opinion of the fair market value of the land taken at the time of the taking to be $1,100, and this testimony was elicited without objection. On cross examination, he explained that his cruising of small lots, as distinguished from the cruising of large timberlands, would practically cover the whole area and that he would determine from a near-total inspection what in his opinion was the fair market value of the land enhanced by what was on the land. He added that several other factors were considered, such as type of terrain and the accessibility of the land to highways. He viewed all the trees as being of merchantable quality. When asked how he had arrived at his figure of $1,100, he responded:

"I took the number of cords, 28 cords of white birch at $30. a cord stumpage, which is $840.; 55 cords of hardwood pulp at $3., for $165. That comes to $1,005. And I figured the land, the

small trees left, to be worth $100., coming to $1,100."

At this point, counsel for defendant moved to have all of Mitchell's testimony stricken from the record because the expert had used the multiplication method in arriving at his ultimate opinion of fair market, which approach consists in multiplying the number of units such as cords of wood or yards of gravel by the unit price. In the presence of the jury, the Court stated:

"There was an expression by this witness as to what he considered to be fair market value of the land on the westerly side of the road, and that is to be stricken from the record. And I am advising you ladies and gentlemen of the jury that *you are not to consider his opinion* as it relates to fair market value when you come to your final deliberations in this case."

The scope of exclusion of Mitchell's testimony was further enlarged when the Court in its instructions to the jury added:

"There was some evidence in this particular case as to stumpage value, but I am instructing you that the test in this case is not the fair market value of the stumpage, but rather the fair market value of the land enhanced by the presence of the timber thereon. You are not allowed or permitted to multiply the estimated stumpage by a unit price to arrive at the fair market value."

Thus, the plaintiff's expert witness, Mitchell, was practically fully discredited; his opinion of fair market value had been stricken and his testimony relative to the near-actual amount of timber on the land and its worth, the jury was told, could not be used. No instructions were given respecting the possible use of such relevant data by the jury in reaching the ultimate goal of fair market value. The plaintiff's other expert, a real estate man, had placed a fair market value of $5,000 on the land on the ground that the highest and best use of the land was for home sites. This testimony was obviously rejected by the jury. Thus, in the posture of the evidence, the plaintiff's right to just compensation rested upon the State's expert evidence, supplemented by the jury's view of the area.

On the other hand, the State's expert witness used the "before and after" method of valuation, appraising the fair market value of plaintiff's 65.5 acres before the taking at $5,000.00 and the fair market value of the remainder after the taking at $4,700.00, thus setting the value of $300.00 upon the parcels actually appropriated. He supported his evaluation with comparable sales data. On cross examination, this State's expert conceded that the highest and best use of the land taken was the feasible economic exploitation of the timber growing on the land. He admitted that the fair market value of the acquired land for the sole purpose for which it could be used —economic exploitation of the timber growth thereon—could either be ascertained through the "before and after" formula or through the more direct approach of establishing the fair market value of the land taken as a separate unit and independently of the entire tract of land from which it came. He further testified that the two small parcels could not be economically operated by themselves as woodland lots but have market value when separated from the entire original tract only in terms of value of the standing timber of such size as was immediately marketable. He further agreed that there was a ready market in the area and a substantial demand for hardwood timber and pulp wood from small quantity lots. He admitted that the cost of stripping such small lots of the merchantable timber standing thereon for its immediate sale would be certain and a mere matter of calculation.

We said in Knox Lime Company v. Maine State Highway Commission, 1967, Me., 230 A.2d 814, that

"the value of minerals in place cannot be determined by multiplying estimated

quantity times a fixed price per unit * * *, and that an opinion based upon such processes alone must be rejected.

We realize the estimated quantity and quality of the mineral in the earth are important considerations to the purchaser and seller. So are the prices at which the products are being sold and the presence or absence of a demand for them. While, as we have said, a valuation based upon a multiplication of these elements *is so speculative* that it must be rejected, *such facts themselves may be considered* by the knowledgeable expert and *by the court and jury,* as may any advantageous or disadvantageous situations as to production or marketing, but 'only as contributing factors to the ascertainment of market value rather than as the criterion thereof.' " (Emphasis supplied.)

■ The estimated detailed costs of uncertain procedures involved in extracting mineral from the earth or in figuring prospective future profits from sales of standing timber of large woodlots may not be received on direct examination of an expert, but only upon cross-examination for purposes of testing the accuracy and soundness of the expert's opinion of values. *Knox Lime Company,* supra. Warren v. Waterville Urban Renewal Authority, 1967, Me., 235 A.2d 295.

We did say in *Warren,* supra, that the testimony of a professional appraiser must be based upon sound principles (Farrington v. Maine State Highway Commission, 1963, 159 Me. 95, at page 96, 188 A.2d 483) and if it appears that there is no reasonable basis for his opinion, then his testimony may be stricken. (Arkansas State Highway Commission v. Russell, 1966, 240 Ark. 21, 398 S.W.2d 201).

■ The factual information given the jury of the number of cords of white birch and pulpwood immediately retrievable from the two parcels involved and the current market price of each per cord, in the instant case of small parcels of timberland, was not evidence inherently incompetent or devoid of all probative value, nor was it tainted by elements of speculation or conjecture, but rather had substantial relevancy as reliable factors in forming a professional opinion of market value of the condemned property. Notwithstanding its weakness as a necessary criterion of value, its use as a contributing factor in the ascertainment of market value is fully recognized in *Knox Lime Company,* supra, 230 A.2d at page 827. To instruct the jury that they were not allowed or permitted to multiply the estimated stumpage by a unit price to arrive at the fair market value, without more, was tantamount to withdrawing from them relevant evidence which under proper instructions they should have been allowed to consider in the instant case as one of the factors in their determination of the fair market value from the whole evidence. Where the value of real estate is in issue, any evidence which will aid the jury in fixing the fair market value of the property is admissible for their consideration, provided such evidence is not speculative in nature, would be considered by a prospective seller or purchaser and tends to enhance or depreciate the value of the property taken. 31A C.J.S. Evidence § 182(1), p. 461.

"Common sense dictates, however, that the willing seller of timberland property and the willing buyer thereof will take into account what they deem to be the fair market value of the standing timber thereon in determining what is a fair price for the land on which the timber stands." International Paper Company v. State, 1968, Me., 248 A.2d 749.

■ When only a part of a tract of land is taken in the exercise of the power of eminent domain, the general rule is that the just compensation which the Constitution guarantees to the owner includes not only the value of the part taken, but also the damages accruing to the residue. The measure of damage is the difference between the fair market value of the whole tract immediately before the taking, and

that of the property remaining immediately after the taking. Peaks v. County Commissioners, 1914, 112 Me. 318, 92 A. 175; Jacobson v. State, State Highway Commission, 1968, Me., 244 A.2d 419.

In *Knox Lime Company*, supra, we recognized an exception to the general rule where property, under its highest and best use, is so adapted to a specialized purpose for its owner's particular benefit that its sale in a free and open market could not be assumed as such property of unique nature is not commonly bought and sold. The Courts have permitted determination of the fair market value of such properties as church buildings, college buildings, cemeteries, etc. to be determined by evidence of their intrinsic value under the special use rule. The instant case does not fall within that category.

The "before and after" formula, in partial taking cases, is the ideal formula where severance damages are claimed, since the parcel taken is generally of limited size or unusual shape, or both, and may have no independent use and little or no economic value, unless considered in its relationship to the remainder of the tract.

In the instant case, the parties stipulated that there was no severance damage to the remainder of the land. Where the part taken has an independent economic use with a market value and may command a higher value as a separate entity, such value has been allowed. Territory of Hawaii v. Adelmeyer, 1961, 45 Hawaii 144, 363 P.2d 979; Lazenby v. Arkansas State Highway Commission, 1960, Ark., 331 S.W.2d 705.

■ The owner of the land taken by the process of eminent domain has the right to this higher fair market value or at least to the opportunity of proving it to the jury, as he is entitled to no less under the constitutional mandate than an exact equivalent for the injury. Curtis v. Maine State Highway Commission, 1964, 160 Me. 262, 203 A.2d 451.

We approved this in *Knox Lime Company*, supra, where we recognized as proper the Washington Court's treatment of the evaluation of rock material already mined by permitting its value to be proved by multiplying the estimated quantity by a unit price. Smithrock Quarry, Inc. v. State, 1962, 60 Wash.2d 387, 374 P.2d 168. We justified the special treatment in *Smithrock*, because "the quantity and quality of the rock was ascertainable and the uncertainties of mining difficulties, market changes and managerial problems no longer existed."

■ In the instant case, the evidence left no area of speculation. The cruise was near 100% of the area of both parcels. The quantity and quality of the trees were definite. The stripping of the timber from the land could be done immediately and the operation would be of short duration. A market existed for the purchase and sale of small timberlands for stumpage value. The demand and prices were stable. Labor and transportation costs were readily ascertainable by simple calculation.

Under the conditions of this case, the jury, in determining fair market value, should have been permitted to consider the number of trees of merchantable quantity standing on the land taken as testified to by the plaintiff's expert witness, together with the cords of wood which a stripping of the lots would have produced and the current prices for the same, all in the supplemental setting given by the defendant's expert that there existed in the area a market for the purchase and sale of small timberland lots on the basis of stumpage values.

■ Furthermore, the opinion of the plaintiff's expert witness, even if inadmissible at the time of the Court's ruling thereon for want of foundational supportive evidentiary basis respecting an existing and stable market and other factual data necessary to expunge any speculative facet in the purchase and sale of small timberland lots for stumpage, should have been

reinstated for jury consideration since the basic requirements had been fully supplied by the defendant's expert witness.

There was error below and the entry will be

Appeal sustained.

All Justices concurring.