**MERRILL TRUST COMPANY, trustee under the will of Louis Oakes, Deceased,**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued March 14, 1980.

Decided July 21, 1980.

Eaton, Peabody, Bradford & Veague, by Daniel G. McKay (orally), Arnold L. Veague, Bangor, for plaintiff.

Thomas G. Reeves (orally), Lester A. Olson, Legal Services Div., Dept. of Transp., Augusta, for defendant.

Before GODFREY, NICHOLS and GLASSMAN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

On October 20, 1970, the Department of Transportation of the State of Maine (hereinafter referred to as MDOT) on behalf of the State of Maine, pursuant to 23 M.R.S.A. § 153, acquired through eminent domain 9.19 acres of land owned by the plaintiff Merrill Trust Company, trustee under the will of Louis Oakes, together with certain easements in the nature of sloping and drainage rights over portions of the remaining property of the plaintiff. The expropriated land was part of a tract approximately 5,500 acres in size located in the unorganized township of Big Squaw, Piscataquis County. The purpose of the taking was to eliminate a curve in the Greenville to Rockwood highway, otherwise known as routes 6 and 15 and hereinafter referred to as the highway. The new section of highway, running north to south through the tract, recast the plaintiff's holdings into three parts, instead of two previously existing segments: a westerly portion of approximately 4,576 acres, an easterly portion of about 902 acres, and a 3.5 acre parcel isolated between the old highway and the new right of way.

Big Squaw Mountain and Mountain View Pond are located in the westerly portion of the tract. At the time of the taking, seven hundred and fifty acres around Big Squaw Mountain had been leased by the plaintiff to the Moosehead Winter Development Cor-

poration and the improvements in that area consisted of a motel, base facilities for ski-lifts, a sanitation system and trails. Otherwise, the plaintiff's property was uninhabited woodland.

A series of three studies, made by various consulting firms relative to the long term land use development of the Squaw Mountain tract in the years 1966, 1968 and 1971, culminated in a classification of the area of the land acquired by MDOT in 1970 as developable land for recreational purposes.

The area taken by the State is comprised of three separate parcels which run severally along the old right of way, except for that portion which abuts the reference 3.5 acre islanded piece between the old and the new road. The largest acquisition, located on the east side of the highway and denominated "parcel 2–2" by the parties, represents an area of 8.03 acres, while the other two small strips of land, "parcel 2–1" and "parcel 2–3," measure .16 acre and 1 acre respectively.

The State appealed from the 1973 award of the Land Damage Board (now the State Claims Board—see P. L. 1975, c. 771, §§ 236, 236–A, effective January 4, 1977) to the Superior Court pursuant to 23 M.R.S.A. § 157, where the case was heard, jury waived, in December 1978.

Each party presented an expert witness to testify to the fair market value of the land taken. The plaintiff's appraiser stated that the highest and best use was "recreational development," and concluded that its per acre value was $2,250.00, supporting, so he claimed, an award of $20,677.50 for the 9.19 acres which the State had condemned. Adding $1,125.00 per acre for severance damages in respect to the 3.5 acre plot isolated by the taking, he testified that the plaintiff was entitled to the total amount of $24,450.00 as just compensation for the State's action. On the other hand, the State's appraiser, who was an employee of MDOT, estimated that in his opinion the total damage award should be $700.00. Specifically, he testified that the highest and best use of the subject property was "woodland with recreational potential," and concluded that its value was $65.00 per acre

for a total amount of $600.00. He allocated an additional $100.00 for the other interests (easements) acquired. He also determined that no severance damages were allowable either on account of the isolated 3.5 acre piece as such or in relation to the remaining property of the plaintiff, because, as he maintained, the plaintiff's total acreage ownership was worth some $1,500,000.00, whether viewed before or after the taking.

The presiding Justice rejected the appraisal approaches of both experts, but expressly stated that, in his attempt to reach a fairer evaluation of just compensation, he did take into consideration their testimony and the opinions they voiced. He concluded the plaintiff was entitled to a total award of damages in the amount of $12,000.00.

Specifically, the trial Justice found that the highest and best use of the property was "partially developed wooded land with potential for further recreational development." He first placed a fair market value of $275.00 per acre for parcels 2–1 and 2–3 on the west side of the highway, awarding $319.00 for the 1.16 acres of land taken and $181.00 for easements and severance damage in connection therewith, for a total value of $500.00. From a value range of $275.00 to $2,000.00 per acre, he then estimated the worth of the 8.03 acres taken on the east side of the highway at the rate of $1,000.00 per acre, for a total damage of $8,030.00, to which he added the sum of $1,000.00 for easement and severance damages in relation to that taking. Finally, he found that the isolated piece between the old highway and the new section of road had suffered severance damages in the amount of $2,459.00.

The State timely appealed from the appropriate judgment entered upon the foregoing findings, and presently challenges the valuation formula utilized, and the damages awarded, by the Court below.

We deny the appeal and sustain the Superior Court.

I. *Fair Market Value—Parcels 2–1, 2–2 and 2–3.*

As its primary argument on appeal, the State earnestly contends that, in all

instances of a partial taking, the exclusive method for valuing the portion condemned must be to estimate its worth as part of the whole. It is suggested that, under the holding of *Timberlands, Inc. v. Maine State Highway Com'n*, Me., 284 A.2d 894 (1971), the only valid valuation formula where severance damages are claimed is the difference between the value of the entire tract immediately before the taking and the value of the remainder immediately after the taking. This is contrary to the recognized traditional measure of damages for such partial takings which authorizes the use of an alternative concept, to wit, the value of the property actually taken together with the diminution in value of the part that remains (severance damage). See *Housing Authority of Newark v. Norfolk Realty Company*, 71 N.J. 314, 364 A.2d 1052, 1056 (1976). Nevertheless, pursuant to its stated argument, the State claims that the Superior Court erred in relying upon the suggested invalid appraisal of the plaintiff's expert witness, who grounded his professional opinion of market values upon a comparison to sales of one half acre lots. We reject this contention.

■ The defendant incorrectly interprets the holding of *Timberlands, supra*, wherein we wrote at 284 A.2d 898:

The "before and after" formula, in partial taking cases, is the *ideal* formula where severance damages are claimed, since the parcel taken is generally of limited size or unusual shape, or both, and may have no independent use and little or no economic value, unless considered in its relationship to the remainder of the tract. (Emphasis supplied).

* * * . Where the part taken has an independent economic use with a market value and may command a higher value as a separate entity, such value has been allowed. *Territory of Hawaii v. Adelmeyer*, 1961, 45 Hawaii 144, 363 P.2d 979; *Lazenby v. Arkansas State Highway Commission*, 1960, 231 Ark. 601, 331 S.W.2d 705.

The owner of the land taken by the process of eminent domain has the right to this higher fair market value or at least to the opportunity of proving it to the jury, as he is entitled to no less under the constitutional mandate than an exact equivalent for the injury. *Curtis v. Maine State Highway Commission*, 1964, 160 Me. 262, 203 A.2d 451.

The *before and after* test was devised for the benefit of the condemnee. The plaintiff is not restricted to the use of this formulation; rather, it is entitled to submit proof of its damages based upon the value of its holdings at their highest and best use. Had the condemnation not occurred, there is no showing that there would be any legal impediment to the plaintiff's subdivision of its 5500 acre tract. It logically follows that upon proper proof, (*see, Curtis v. Maine State Highway Com'n*, 160 Me. 262, 203 A.2d 451 (1964)), the plaintiff is entitled to recover the higher value of the land taken, whether or not it asserts a claim for severance damages.

The defendant also argues that the values assigned to the various parcels by the Superior Court Justice were arbitrary, and without evidentiary support. The record reveals that, contrary to this assertion, the presiding Justice carefully followed the guidelines enunciated in *Timberlands*, reaching a highly rational conclusion in the face of such disparate appraisal testimony.

■ In estimating the value of the land acquired by the State, Walter Foster, the plaintiff's expert witness, relied upon six comparable sales which he adjusted for time, location, and development and promotional costs. The parcels had been sold in 1972 by Skylark Incorporated, a subsidiary of Scott paper, to various grantees and are located approximately one quarter mile south of the plaintiff's property. Each parcel measured 22,000 square feet and sold for $2,500.00, for a unit value of $5,000.00 per acre. Based upon this data, Mr. Foster concluded that the 9.19 acres condemned had an indicated value of $2,250.00 per acre. On the other hand, the State's expert witness, Henry Plimpton, estimated the "contributory value" of the subject property to be $65.00 per acre. He based this estimate

in particular upon sales comparisons to two tracts of land: a 70 acre parcel which sold in 1966 for $2,900.00 or $41.00 per acre, and a 100 acre parcel, also sold in 1966, for $4,500.00 or $45.00 per acre. In ascertaining the extent of severance damages, however, Mr. Plimpton considered three sales of large tracts of land and concluded that the value of the entire 5500 acres was $1,500,000.00, both before and after the taking, an estimate which equates to a value of approximately $275.00 per acre.

The presiding Justice explained the basis for his finding on the record.[1] Consistent with the *Timberlands* rationale, he determined that parcels 2–1 and 2–3 to the west had little independent economic value because of their "minimum depth," and affixed their value at $275.00 per acre by consideration of their relationship to the remainder of the tract. In valuing parcel 2–2, the presiding Justice looked to its size and shape. He found that part of the parcel had an independent economic use with a market value of $2,000.00 per acre, and that part thereof had no such independent value and was, therefore, worth $275.00 per acre. He then concluded that parcel 2–2 had an average value of $1,000.00 per acre.

The owner of private property, upon a taking of his property for public use, must be put in as good a condition by means of monetary reimbursement as he would have been in, if his land had remained in its entirety within his sole proprietorship. *Bangor & Piscataquis R. R. Co. v. McComb*, 60 Me. 290, 297 (1872). The con-

stitutional provision that "[p]rivate property shall not be taken for public uses without just compensation" (Maine Constitution, Art. 1 § 21) cannot be carried out, in its letter and spirit, by anything short of just compensation which in cases of partial takings includes not only the value of the part taken, but also the damages accruing to the residue, i. e. severance damages to the part not taken. *Timberlands, supra*, 284 A.2d at 897.

True, the burden of proof as to the amount of the damages to which an owner of property is entitled by reason of the exercise of the power of eminent domain rests upon the owner. The condemnee has the burden of proving by the fair preponderance of the evidence his right to expropriation damage and the amount thereof, and, in the case of partial takings, the additional amount of damage resulting from the impairment of the value of the residue due to the taking. *Arnold v. Maine State Highway Commission*, Me., 283 A.2d 655 (1971); see also *Nasco, Inc. v. Director of Public Works*, 116 R.I. 712, 360 A.2d 871 (1976); *State, Through Dept. of Highways v. Champagne*, La.App., 371 So.2d 626 (1979).

But, the general rule of law, which requires a party who claims compensatory damages for a wrong suffered to establish the amount thereof to a reasonable certainty, does not compel absolute certainty. Damages are not fatally uncertain for the reason that the amount of the loss sustained is incapable of exact proof by

---

1. The presiding Justice stated on the record:

 [B]ecause of the nature of the taking and the nature of the Plaintiff's land, I've chosen to deal separately with the takings on the west side of the original highway. Parcels 2–1 and 2–3, which comprises 1.16 acres lying along the west side of the original highway, together with the easements associated with those takings and because of the shape of those two parcels and their minimum depth, [the] value [of the] land taken [substituted for the words "of value and land taken" an obvious stenographic error] is minimal for recreational development, and I've found that value to be $319;

 \* \* \* \* \* \*

 Now in dealing with parcel 2–2, which consisted of 8.03 acres on the east side of the original highway together with the easements associated with that taking, I found that the shape and the depth of the land taken would reduce the value of the land for recreation development but not to the same extent as on the west side. I found that the value of the land taken ranges from $275 an acre to $2,000 an acre.

 Having in mind that the depth at the northerly extreme is minimal, depth in the middle of the area is more substantial, and having in mind that the variation is not uniform, I've come up with an average value of the acreage taken at $1,000 per acre, which applied to the acreage is $8,030.

mathematical demonstration. The triers of facts are allowed to act upon probable and inferential as well as direct and positive proof. They are permitted to make the most intelligible and probable estimate which the nature of the case will permit, given all the facts and circumstances having relevancy to show the probable amount of damages suffered. A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability. *Hincks Coal Co. v. Milan and Toole*, 135 Me. 203, 193 A. 243 (1937); *Lawson v. McLeod*, 152 Me. 67, 123 A.2d 199 (1956); *Michaud v. Steckino*, Me., 390 A.2d 524 (1978). The same rule applies in eminent domain cases.

 Furthermore, the presiding Justice, as fact-finder, is not bound by the precise amount of damages to which the expert witnesses have testified. The trial court's power to agree or disagree, whether in relation to market values or severance damages, necessarily results from the fact-finder's right to evaluate the weight to be given to each expert's testimony, as well as from his right to make factual determinations respecting the several factors relied upon by the expert witnesses which have relevant influence upon market values and severance damages. His conclusion may be different from that of any of the expert witnesses, so long as his award of damages finds support in the evidence. *State, Through Dept. of Highways v. Romano*, La.App., 343 So.2d 222 (1977); *Louisiana Gas Purchasing Corp. v. Sincox*, La.App., 368 So.2d 816 (1979). See also *Harris County Flood Control District v. Hill*, 348 S.W.2d 806 (Tex.Civ.App.1961). See generally, 5 Nichols on Eminent Domain, § 17.1 (June 1979 Supp.).

As stated in *Warren v. Waterville Urban Renewal Authority*, Me., 235 A.2d 295, at 305, cert. denied 390 U.S. 1006, 88 S.Ct. 1249, 20 L.Ed.2d 105 (1967), the fact-finder "was not restricted to a choice between the estimates of the two warring experts and this Court as an appellate judicial tribunal cannot substitute its judgment for that of . . . [the trier of the facts] in awarding just compensation in eminent domain proceedings." On the record before us the evidence, though in conflict, does support the finding of the Superior Court on the issue of the market values of parcels 2–1, 2–2 and 2–3.

## II. *Severance Damages.*

The State challenges the sufficiency of the evidence to support the trial Justice's award of severance damages made in connection with each of the three parts of the plaintiff's remaining lands following the taking, contending that the Court's several findings of such damages was arbitrary and reversible error. We disagree.

 Initially, may we repeat what we said in *Timberlands, supra*, 284 A.2d at 897, that "[w]hen only a part of a tract of land is taken in the exercise of the power of eminent domain, the general rule is that the just compensation which the Constitution guarantees to the owner includes not only the value of the part taken, but also the damages accruing to the residue." See also *Peaks v. County Commissioners*, 112 Me. 318, 320, 92 A. 175 (1914); 4A Nichols on Eminent Domain, 3rd Ed., §§ 14.1[2], [3], 14.2, 14.21.

In the instant case, the State's taking has segmented the plaintiff's lands three ways; some small portion (1.16 acres) was extracted from the land area to the west of the old right of way (with minimal severance damage impact as mentioned by the presiding Justice on the large area owned by the plaintiff on that side of the highway), while the plaintiff's property to the east of the old right of way was split in two separate parcels, the isolated piece and the rest of the property to the east of the new right of way.

 Where only a portion of a landowner's property is taken and there remains to the condemnee a singular contiguous parcel suitable and adaptable to a unitary use, the general rule is to regard the entire remainder as a single entity for the purpose of assessing severance damages for the taking of a part. *City of Denton v. Hunt*, 235

S.W.2d 212, 215 (Tex.Civ.App.1950). In instances, however, where a substantial portion of a contiguous remainder piece is suitable and adaptable to a higher and better economic use than the use to which the rest thereof can be put, a land owner may claim severance damages to that portion which may be put to the higher and better use and waive severance damages to the balance. *Southwestern Bell Tel. Co. v. Ramsey*, 542 S.W.2d 466, 472 (Tex.Civ.App.1976); *Minyard v. Texas Power & Light Company*, 271 S.W.2d 957 (Tex.Civ.App.1954).

In this case, however, the partial taking left the owner with three completely separate parcels, the large area to the west of the old highway, the isolated piece between the old and the new right of way, and the remainder of the property to the east of the new section of highway. Under such circumstances, the severance damage rule, applicable to partial takings where there remains a single contiguous parcel suitable or adaptable to a unitary use, need not be the formula to measure the variation in values of such separate plots; and the approach used by the Court below in estimating the severance damages caused to the three different and discontinuous pieces of land of the plaintiff by reason of the taking as if they stood alone was proper.

In his decision, the presiding Justice said:

"Now I've applied two severance factors because the taking of parcel 2.2 severed part of the Plaintiff's land and the impact differs from the west side of the parcel to the east side of the parcel taken. My approach to the 3.5—acre parcel isolated between the new and the old highway is to find that the impact of the taking reduced the value of that acreage from the $1000 average that I found above to the $275 value that I applied originally on the west side of the highway."

In relation to the 3.5 acre piece, which suffered the greatest damage by being severed from the balance of the land east of the highway, he estimated that the plaintiff was entitled to an award of $2,459.00. This conclusion was well within the range of values testified to by the expert witnesses. (There was a mathematical error in computation, however, as the total should have been $2,537.50, some $78.50 short of the correct amount; this error favored the State).

In connection with parcels 2–1 and 2–3 taken on the west side of the old highway, the single Justice allowed severance and easement damages of $181.00, and, on account of the taking of parcel 2–2, the sum of $1,000.00 as such severance and easement damages. There was evidence given by the State's expert respecting easement damages, but neither expert testified specifically in regard to severance damages in connection with the taking of parcels 2–1, 2–2 or 2–3. The State argues that, without specific expert evidence of severance damages focussing directly on each parcel, the Justice below committed reversible error in adjudicating the amount of such damages. Again, we disagree.

It is true that findings of severance damages cannot rest on the mere conjectural subjective judgment of the court, but must find support in the evidence. In the instant case, severance damages relating to the 3.5 acre isolated parcel were clearly established from the testimony of the plaintiff's expert. This parcel, prior to the taking, was an integral part of the plaintiff's land area to the east of the old highway and was in close proximity to the plaintiff's holdings to the west of said highway. The whole area was fully described by the witnesses and the presiding Justice had before him several exhibits, such as maps and an aerial photograph to which he expressly referred in his decision. With such an array of physical facts, together with the positive severance damage values testified to in relation to the 3.5 acre piece, the trial Justice had sufficient evidence before him upon which to base an objective value judgment respecting the damages caused to the other parcels by reason of the taking. There was an adequate evidentiary showing of facts which afforded the Court

below an objective basis for measuring the plaintiff's loss in severance damages with reasonable certainty. See *Moore v. Daggett,* 129 Me. 488, 150 A. 538 (1930); *Gottesman & Co. v. Portland Terminal Co.,* 139 Me. 90, 27 A.2d 394 (1942); *Doane v. Pine State Volkswagen, Inc.,* Me., 377 A.2d 481 (1977).

■ The triers of the facts, here the presiding Justice, may act upon probable and inferential as well as direct and positive proof. And when the amount of the damages, such as in the instant case the amount of severance damages, cannot be estimated with exact precision, we can see no objection to a determination made on facts and circumstances in evidence having a tendency to show their probable amount and representing a rational estimate properly to be inferred therefrom.

■ Furthermore, the trial Justice's findings respecting severance damages in relation to the plaintiff's lands other than the 3.5 acre parcel were not restricted to severance damages alone, but included his value judgment for the number of easement rights taken by the State in connection therewith. There is nothing in the record to indicate the factual basis or the legal principles the single Justice considered in reaching the particular conclusions which ultimately resulted in the unitary dualistic award. The State did not avail itself of M.R.Civ.P., Rule 52(a), to compel individual treatment, under which the court would have been required, on motion, to make special findings of fact and to state its conclusions of law thereon in relation to the plaintiff's dual claims of damage. Under such circumstances, we cannot say that there was error. *Arnold v. Maine State Highway Commission,* Me., 283 A.2d 655, 659–60 (1971).

### III. *Interest, Costs, and Attorney's Fee.*

■ At oral argument, the attorney for the plaintiff brought to the attention of the Law Court its claim to interest on the judgment, costs and attorney's fee on appeal allegedly pursuant to 23 M.R.S.A. § 157.[2] We note that this is not a case wherein the judgment of the Superior Court is affirmed or reversed in part, or vacated within the provisions of M.R.Civ.P., Rules 76(a) or 76(e). Hence, costs shall be taxed against the unsuccessful party and interest shall be allowed as provided by law.

■ Whether counsel fees on appeal to the Law Court are allowable within the meaning of 23 M.R.S.A. § 157, we need not decide and intimate no opinion thereon, since this issue, raised for the first time at oral argument, was not briefed. Under such circumstances, the plaintiff is deemed to have waived the point. See *Sard v. Sard,* 147 Me. 46, 59, 83 A.2d 286, 293 (1951); *MacArthur v. Dead River Co.,* 312 A.2d 745,

2. This statutory provision at all times material to these proceedings provided in pertinent part as follows:

The department or any party or parties aggrieved by an award of the Land Damage Board [now the State Claims Board—P.L. 1975, chap. 771, sec. 246] may appeal therefrom to the Superior Court in the county where the land is situated within 30 days after the date of the receipt by the appellant of the notice of award . . .

The court shall determine the same by a verdict of its jury or, if all parties agree, by the court without a jury or by a referee or referees and shall render judgment for just compensation, with interest where such is due, and for costs in favor of the party entitled thereto; except that if the department appeals and if the department does not prevail, interest where such is due and costs shall be paid by the department and the owner or owners shall be reimbursed by the department for a reasonable attorney's fee.

\* \* \* \* \* \*

If either the owner or owners of record or the department appeal and the just compensation finally awarded, exclusive of interest, is not less than the gross damage determined by the Land Damage [State Claims] Board, exclusive of any interest allowed, then the court shall give judgment to the owner or owners for the amount in which the final award is in excess of the money deposited in court, plus the amount paid the owner or owners, exclusive of any interest awarded by the Land Damage [State Claims] Board, and for interest on such excess from the date of taking and for costs from the time of appeal. No interest shall be allowed on so much of any award as has been paid into court or on any amount paid to the owner or owners. . . . .

746 (1973); *State v. Campbell*, 314 A.2d 398, 404 (1974).

The entry will be:

Appeal denied.

Judgment of the Superior Court entered June 22, 1979 affirmed.

All concurring.