**In re ESTATE OF Lucien BLOUIN.**

Supreme Judicial Court of Maine.

Argued Jan. 6, 1981.

Decided June 9, 1981.

Nisbet, MacNichol & Ludwig, Francis M. Jackson, III (orally), South Portland, for plaintiff.

Flaherty & Flaherty, Kevin S. Flaherty (orally), Roger Flaherty, Bourque & Brodrick, Ronald D. Bourque, Sanford, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ.

CARTER, Justice.

Lucien Blouin died testate in 1974, naming his son, Armand Blouin, Sr., as executor of his estate, and naming as his residuary beneficiaries his two daughters and Armand Blouin, Sr. The testator's will directed the executor to sell all of his real estate and its contents, including a business property housing a snack bar and a Dairy Queen franchise in Kennebunk. The executor was directed to first offer the property to Armand Blouin, Sr.,[1] "at its appraised value." After payment of debts, expenses, and one small specific bequest, the proceeds of the sales were to be equally divided among the testator's three children.

The executor chose J. Guptill to act as appraiser. His name was submitted to the Probate Register who, in October 1974, pursuant to 18 M.R.S.A. § 1802 (repealed effective Jan. 1, 1981), appointed him to appraise the estate's assets. By December, 1974, Guptill had valued the business property (land and building) at $16,000. The executor purchased the business property jointly with his wife at that price from the estate on December 2, 1974. On June 12, 1975, the executor made oath that his inventory, which contained Guptill's appraisal, was a true inventory. A hearing on the inventory was held June 29, 1976, before the Probate Court, at which testimony was taken regarding the value of the business property. The Court found the fair value of the business property to be $28,000, ordered that the inventory be amended accordingly, and accepted and filed the amended inventory.

The executor's two sisters (residuary beneficiaries) appealed from this order, contending that the business property was worth more than $28,000. That appeal was dismissed by the Supreme Court of Probate as being interlocutory.

The executor filed accountings with the Probate Court in 1976 and 1978. The latter accounting listed the business property as valued at $28,000 but sold for $16,000, thereby showing a $12,000 loss. Attorney's fees and executor's fees were also listed. After a hearing, the Probate Court disallowed both accountings and ordered the executor to file a new accounting. Certain fees were disallowed, and the executor was ordered to pay $12,000 into the estate, representing the increase in the appraised value of the business property.[2]

---

* Glassman, J., sat at oral argument and in the initial conference, but did not participate further in this decision.

1. Since Armand Blouin, Sr. is the executor, the will directed him to offer the property first to himself.

2. In addition, a petition for removal of Armand Blouin, Sr. as executor, brought by the two sisters, was denied.

The two sisters and the executor appealed to the Supreme Court of Probate. The executor challenged the order to file a new accounting, the order to pay into the estate $12,000, the Probate Court's *power* to amend the original appraisal of $16,000, and the disallowance of certain attorney's fees.[3] The sisters challenged the $28,000 *valuation* of the business property, and raised several other issues not relevant here. It is important to note that the executor did not challenge the fairness of the $28,000 value placed upon the business property—rather he contended that the Probate Court acted improperly in *attempting to change* the original appraisal of $16,000. Only the sisters questioned whether $28,000 was the fair and just value of the business property.

After a hearing, the Supreme Court of Probate denied both appeals. Only the executor has appealed to the Law Court.

The executor presses essentially the same arguments before us as he argued below. We believe, however, that the principal issue before us is that of the proper standard of review to be applied by the Supreme Court of Probate on an appeal from a Probate Court order.[4] This issue was first raised by the Court at oral argument. It is not addressed by either party in the briefs.

■ This is not an issue which the parties could have raised below. The Law Court will generally treat such an issue as waived if the parties fail to raise it, *Laurel Bank and Trust Co. v. Burns*, Me., 398 A.2d 41, 44 (1979), primarily to ensure an opportunity for proper determination, at the trial level, of the facts underlying the issue. *Reville v. Reville*, Me., 289 A.2d 695, 697 (1972). That policy would not be furthered in this case by treating this issue as waived; whether the Court applied the proper standard of *de novo* review, or a traditional standard of appellate review is a question of law which can be answered here without the necessity of trial level fact-finding.

■ When an appeal is taken to the Supreme Court of Probate, the Probate Court order is vacated and "is thenceforth of no force or effect." *Shannon v. Shannon*, 142 Me. 307, 311, 51 A.2d 181, 183 (1947). The cause is heard *de novo* upon new evidence and arguments. The Supreme Court of Probate must base its decision on the evidence *presented to it*, which may be entirely different from that presented to the Probate Court. It cannot base its decision either upon proofs or upon the legal effect of proofs made solely *before the Probate Court. Id.* at 311–12, 51 A.2d at 183–84. It is apparent from the opinion below that the Supreme Court of Probate used an improper standard for review. In denying both appeals, the Court stated: "In my opinion, neither party has shown by a preponderance of the evidence any grounds for appeal." This language indicates that the Court gave some presumptive weight to the Probate Court's findings, which the parties were obliged to overcome by a preponderance of the evidence.[5]

The judge of the Supreme Court of Probate informed the parties that the proceedings before him would be a hearing *de novo*. In reliance thereon, the parties may have excluded evidence introduced in Probate Court, or submitted new evidence. By not

---

3. The executor did not appeal from the disallowance of certain executor's fees.

4. As of January 1, 1981, an appeal from a Probate Court order is taken directly to the Law Court. The role of the Superior Court as the Supreme Court of Probate has been eliminated. 18–A M.R.S.A. § 1–308 (Effective January 1, 1981).

5. For *example, the* Supreme Court of Probate affirmed the Probate Court's valuation of the business property without relating any evidence which would support the figure of $28,000. Indeed, the opinion does not specifically address the issue of valuation at all. We deduce that the court placed upon the appellants (on this issue, the two sisters) the burden of proving by a preponderance of the evidence that the business property's value exceeded $28,000. The court should have independently determined the value of the business property based upon the evidence presented to it without regard to the judgment of the Probate Court judge.

exercising his independent judgment based on only the evidence before him, the judge of the Supreme Court of Probate erred. *Perry Equipment Company, Inc. v. Maine Trading & Transportation, Inc.,* Me., 390 A.2d 1110, 1111 (1978) (per curiam).

 The application of an improper standard of review may have denied the parties their fundamental right to a fair trial. The error is apparent on the face of the record. It is an error that is pervasive in its harmful impact upon the adjudicatory process. It must operate to prejudice the parties in their choices of trial strategy and selection of evidence for admission at trial. Further, we cannot determine which findings of the Probate Court were given weight in the decision-making process of the Supreme Court of Probate. We cannot determine which fact-findings of the Probate Court were excluded from the decision-making process in the Supreme Court of Probate, or for what reason. In the absence of an effective record on these points, we cannot now make an assessment of the existence of prejudice, nor of the extent of its impact, if it did in fact occur.

In such circumstances, we find the error to require vacation of the judgment of the Supreme Court of Probate even though no issue was generated out of it by the parties in the Supreme Court of Probate or in this Court.

While the error below is fundamental, it is not *jurisdictional.* The Supreme Court of Probate's judgment decided issues over which the Court had subject-matter jurisdiction; the Court had the *power* to order that the Probate Court order be affirmed. *See* 4 M.R.S.A. § 406 (repealed effective Jan. 1, 1981). Thus, the Supreme Court of Probate's judgment is not *void* ; issues decided in that judgment, from which no appeal has been taken, are *finally* determined and will not be before the Court below on remand. *See Littlefield v. Littlefield*, Me., 292 A.2d 204, 207–08 (1972).

We remand to the Supreme Court of Probate for a trial *de novo* upon only those issues presented to us on appeal by the executor.[6]

The entry is:

Judgment vacated.

Remanded to the Supreme Court of Probate for further proceedings in accordance with the opinion herein.

All concurring.

---

**6.** The Supreme Court of Probate should decide as a preliminary matter whether to apply the new Probate Code procedures to further proceedings in this case. 18–A M.R.S.A. § 8–401(b)(2). If the new Probate Code is to be applied, the case should, of course, be remanded to the Probate Court, since the new Code eliminates the Supreme Court of Probate. 18–A M.R.S.A. § 1–308.