## AUGUST REALTY, INC.

### v.

## INHABITANTS OF the TOWN OF YORK.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1981.

Decided July 2, 1981.

J. Armand Gendron (orally), Sanford, Hoover & Vigue, P. A., Ronald L. Vigue, Berwick, for plaintiff.

Sewall, Strater & Hancock, Frank E. Hancock (orally), York, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN,* ROBERTS and CARTER, JJ.

CARTER, Justice.

In 1977, the plaintiff, August Realty, Inc., owned a two-thirds interest in approximately 17 acres of land with 245 feet of frontage on Bell Marsh Road, a town way in York. In May of 1977, the York Board of Selectmen voted to discontinue 1.65 miles of Bell Marsh Road (retaining a public easement therein), and by Order of Discontinuance dated June 9, 1977, the Board determined that damages to each abutter were one dollar. Pursuant to 23 M.R.S.A. § 3026 (1980), the discontinuance order was approved at a Town Meeting. The plaintiff appealed to the Superior Court (York County), which held that the plaintiff had failed to prove, by a preponderance of the evidence, that the value of its land had been materially diminished or that it had suffered any material loss as a result of the discontinuance of Bell Marsh Road. Therefore, the Court ordered "appeal denied, judgment for the defendants and against plaintiff . . . ."[1]

On appeal, the plaintiff argues that certain findings of fact made below are clearly erroneous. We believe, however, that the principal issue now before us is whether the Superior Court applied the correct legal standard in determining the

---

* Glassman, J., sat at oral argument and in the initial conference, but did not participate further in this decision.

1. We interpret the Superior Court's order as awarding the plaintiff no damages.

amount of the plaintiff's damages; we find that it did not do so. This issue was not addressed by the brief of either party. While we will generally treat an issue as waived where the parties fail to raise it, we do so primarily to ensure an opportunity for the proper determination, at the trial level, of the facts underlying the issue. *In re Estate of Blouin*, Me., 430 A.2d 822, 824 (1981). Without the necessity of further trial level fact-finding, we can determine whether the proper legal standard was applied below; the error is apparent on the face of the record. Therefore, we do not treat this issue as waived. *See Id.*

In determining damages, the Superior Court properly began by looking to 23 M.R.S.A. § 3029 (1980), which reads in part:

Damages; appeal

Damages shall be determined using the methods in [23 M.R.S.A. §§] 154 through 154E, as far as practicable, except that references to the "commission"[2] or the "board" shall mean the "municipal officers" and references to the "state" shall mean the "municipality."

Any person aggrieved by the determination of the damages awarded to owners of property or interests therein under this chapter may, within 60 days after the day of taking, appeal to the Superior Court in the county where the property lies. The court shall determine damages by a verdict of its jury or, if all parties agree, by the court without a jury or by a referee or referees and shall render judgment for just compensation, with interest where such is due, and for costs in favor of the party entitled thereto.

The trial court strayed, however, when it interpreted that section as requiring *the court* to use the methods in sections 154–154E in determining damages.

■ When a municipality discontinues a town way, the municipal officers must determine the amount of damages, if any, to be paid to each abutter. 23 M.R.S.A. § 3026. In making that determination, the *municipal officers* are directed by section 3029 to use the methods in sections 154–154E. An examination of the latter sections makes this point clear.

Section 154 deals with condemnation proceedings. It provides that when the Department of Transportation files a notice of condemnation, it must serve upon the owners of the condemned property a check in the amount of the determined net damage and offering price, and an itemized statement listing the department's determination of various elements of damage. Whether the department appraisals disclose severance damage determines which particular elements must be itemized in the notice.[3] If the property owner rejects the department's offer, and the department fails to negotiate an agreement for just compensation, then a copy of the department's itemized statement, among other things, is filed with the State Claims Board. 23 M.R.S.A. § 155. After a hearing, the Board determines "each of the elements of damage listed in section 154" and such other elements of damages as are legally compensable. 23 M.R.S.A. § 156. Either party may appeal the Board's decision to the Superior Court, "by filing a complaint setting forth substantially the facts upon which the case shall be tried like other cases." "The court shall determine [damages] . . . and shall render judgment for just compensation . . . ." 23 M.R.S.A. § 157.

**2.** P.L.1971, c. 593 § 20 states: "Whenever in the Revised Statutes, Title 23 the term 'commission' appears, it shall mean 'Department of Transportation' unless the context otherwise requires." The term "department" was accordingly substituted for "commission" throughout 23 M.R.S.A. §§ 154–154E. We deem it a mere oversight that the same change does not appear in the text of section 3029.

**3.** Sections 154–B through 154–D prevent the department from coercing owners to agree on the price, from acquiring only part of an owner's property leaving the owner with an uneconomic remnant, and from requiring a person to move from a dwelling or move his business without 90 days written notice. Section 154–A discounts changes in the fair market value of condemned property due to the public improvement for which the property is acquired. Section 154–E provides for compensating the owners of acquired structures or improvements where a third person owns the land upon which they rest.

Thus, while the department and the State Claims Board are specifically required to determine damages and to state their decisions explicitly in terms of the itemized statement of the elements of damages provided for in section 154, the Superior Court only renders judgment for "just compensation." While the Legislature intended to prescribe methods for administrative agencies to use in determining just compensation, it wisely did not attempt to limit the judiciary's power to determine just compensation. The right of a property owner to just compensation when his property is taken for public uses is firmly embedded in our Constitution. Me.Const. Art. I, § 21. "While the legislature has been held to possess a limited right to provide for certain criteria to be used in the determination of the compensation, it has become settled that the ultimate power to determine such question lies with the judiciary." 3 Nichols, *The Law of Eminent Domain* § 8.9 (1980); 4 Nichols, *supra* § 12.1[3] (1980); *see Orono-Veazie Water District v. Penobscot County Water Co.*, Me., 348 A.2d 249, 255 (1975).

This same distinction between courts and municipal officers is apparent in section 3029. As can be seen from the title, section 3029 deals with two topics: damages and appeals. The municipal officers who make the initial determination of damages after discontinuance of a town way occupy the same position as the Department of Transportation in condemnation proceedings. Indeed, section 3029 makes that analogy explicit by providing that references in sections 154–154E to "commission" (*i. e.*, "department," *see* note 2 *supra*) shall mean the "municipal officers." The second paragraph of section 3029, providing for appeal to the Superior Court, states in nearly the same language as used in section 157 that "[t]he court shall determine damages ... and shall render judgment for just compensation ...." We hold that section 3029 does not require the Superior Court to as-

sess damages pursuant to 23 M.R.S.A. §§ 154–154E.

We must now examine the criteria which the Superior Court did in fact use in reaching its determination of damages. It applied section 154(3) which reads:

Compensation not involving severance damage.[4]

Where the department appraisals disclose no severance damages, state the amount of compensation itemized in accordance with the department's determination of the following elements of damage:

A. The highest and best use of the property at the date of taking;

B. Repealed.

C. The fair market value of the real property taken as of the date of taking;

D. Repealed.

E. Offering price;

F. The check represents the state's offer of just compensation. If the offer is not acceptable and the State cannot negotiate an agreement on the amount of just compensation within 60 days from the date of taking, the owner may apply to the department within said 60 days and have the matter referred to the State Claims Board for assessment of the damage. Acceptance and cashing this check will not jeopardize negotiation and will not be construed as acceptance of the offer;

G. Enclosed Check No. . Amount: $ . .
Payable to: ...................
Sent to: .....................

The court used elements A, C, *and E,* finding as a fact that the offering price to the plaintiff was one dollar, and that the land's best use is for housing development. The court identified the property interest taken as the benefit to the plaintiff of having the town maintain the road for the safety and convenience of travelers, but found that in fact the road had been minimally maintained and snowplowed for many years.

---

4. We note here that the choice of subsection 3 was inappropriate since this case does appear to involve severance damages, *i. e.*, damages accruing to the remaining land after a part is taken. *See Merrill Trust Co. v. State*, Me., 417

A.2d 435, 440 (1980); *cf. Jordan v. Town of Canton*, Me., 265 A.2d 96, 98 (1970) ("The right of access to a public way is a property right in the nature of an easement.")

The court held that the plaintiff had not shown by a preponderance of the evidence any material loss or that the value of its land had materially diminished as a result of the discontinuance.

The Superior Court's holding on its face is in accord with what our courts have accepted, in principle, as one measure of just compensation, *i. e.*, the difference in the fair market value of the property immediately before the taking and that of the property remaining immediately after the taking. *Merrill Trust Co. v. State*, Me., 417 A.2d 435, 439 (1980); *Timberlands, Inc. v. Maine State Highway Comm.*, Me., 284 A.2d 894, 897–98 (1971). However, the court erred in considering the "offering price" as a factor in its determination of damages.

Section 154(3) itself does not contemplate that the "offering price" is an "element of damage." Rather, it is simply the total amount of damages computed by the department which is being offered to the property owner. It is listed as subparagraph E (along with subparagraphs F and G, which clearly are not "elements of damage") because the offering price is required to be listed on the itemized statement sent along with a check to the property owner.

In the instant case, the Superior Court presumably considered, as a factor in determining damages, the York Board of Selectmen's collective judgment of what damages the plaintiff should recover. This put the Superior Court in the position of an appellate court, giving some measure of presumptive weight to another decision-maker's evaluation of damages. Moreover, the Board of Selectmen is not obliged to allow the plaintiff to present evidence of his damages—the sole opportunity to do that is in the Superior Court. Thus, the plaintiff was prejudiced because the Superior Court required it to prove its damages by a preponderance of evidence while the probative value assigned to the Selectmen's "offering price" weighed against it. Because it appears that the trial court did not exercise its independent judgment based solely on the evidence before it, we vacate the judgment and remand for further proceedings. *Cf. In re Estate of Blouin*, Me., 430 A.2d 822, 825 (1981) (failure to give trial *de novo*); *Perry Equipment Co., Inc. v. Marine Trading & Transportation, Inc.*, Me., 390 A.2d 1110, 1111 (1978) (failure to give trial *de novo*).

The entry is:

Judgment vacated.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

All concurring.