**ESTATE OF Lucien BLOUIN.**

Supreme Judicial Court of Maine.

Argued Jan. 23, 1985.

Decided April 18, 1985.

Francis M. Jackson (orally), Westbrook, for plaintiff.

Kenneth Clegg (orally), Kevin Flaherty, Sanford, for defendant.

Before McKUSICK, C.J., and VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Armand Blouin, Sr., the executor of his father's will, appeals from a judgment of the York County Probate Court ordering him in his individual capacity to pay $12,-000 plus interest to his father's estate and disallowing certain attorneys' fees requested by him from the estate.

## I.

Lucien Blouin died testate in September 1974. His will named his son, Armand Blouin, Sr., (hereinafter referred to as "Blouin" or "the executor") to serve as executor of his estate and designated his two daughters and Blouin as his residuary beneficiaries. The testator's will directed the executor to sell all his real estate and its contents, which included a Dairy Queen and its franchise and equipment in Kennebunk. The will authorized the executor to sell the property without a license from the Probate Court and directed him to offer the property first to Blouin (i.e., himself) "at its appraised value." The proceeds of the sales were to be placed in the residue of the estate, to be equally divided among the testator's three children.

To evaluate the assets of the estate, the Probate Register appointed the appraiser recommended by the executor, and issued a warrant and inventory. By December 1974, the appraiser had valued the Dairy Queen land and building at $16,000. Blouin purchased the property from the estate at that price on December 2, 1974. On December 4, 1974, Blouin as executor delivered a check for $11,000 to each of the beneficiaries.[1] The beneficiaries cashed their checks and have retained the proceeds.

In March 1975, before the return of the warrant and inventory, the two daughters of the testator entered objections to the inventory and appraisal. On June 12, 1975, the executor made oath that his inventory, including the $16,000 appraisal, was a true inventory. On June 29, 1976, the Probate Court held a hearing on the inventory at which testimony was taken regarding the value of the Dairy Queen real property. The court found the fair value of the property to be $28,000, amended the inventory to reflect the increase in value, then accepted and filed the amended inventory.

The daughters contested the order, contending that the property was worth more than $28,000. In December 1977, the Superior Court, sitting as the Supreme Court of Probate, dismissed the appeal as interlocutory.

The executor filed accountings with the Probate Court in 1976 and 1978. After hearing, the Probate Court disallowed both accountings and ordered the executor to file a new accounting. The court also ordered Blouin to pay $12,000 to the estate, representing the increase in the appraised fair value of the property, disallowed certain attorneys' fees, and denied the daughters' petition for removal of Blouin as executor.

Both the daughters and Blouin appealed to the Supreme Court of Probate. Blouin did not appeal the Probate Court's valuation of the property, but disputed the order to file a new accounting, the order to pay $12,000 to the estate, the power of the Probate Court to amend the original inventory appraisal, and the disallowance of certain attorneys' fees. The daughters appealed the Probate Court's $28,000 valuation of the business property, and raised several other issues not relevant here.

1. The equipment located at the Dairy Queen was appraised at $2,000 and the franchise at $15,000. These items are not in issue.

After hearing, the Supreme Court of Probate affirmed the decision of the Probate Court. Blouin appealed to this court. Without reaching the issues raised in that appeal, we determined the Supreme Court of Probate had used an improper standard of review. *In Re Estate of Blouin*, 430 A.2d 822, 824–25 (Me.1981) (*Blouin I*). Instructing the court initially to determine whether to apply the new Probate Code procedures,[2] we vacated the judgment and remanded the case to the Supreme Court of Probate for a trial de novo on only those issues the executor brought before us on appeal. *Id.* at 825 & n. 6.

The Superior Court declined to sit as the Supreme Court of Probate and remanded the matter to the Probate Court for trial.[3] The Probate Court issued an order based on *Blouin I*, declaring foreclosure of the issue of the fair value of the Dairy Queen real estate. In January 1984, after a hearing de novo based on transcripts, other documentary evidence, and stipulations, the court held that because all the acts giving rise to the proceeding occurred before January 1, 1981, the substantive law in force before the Probate Code became effective would govern. The court entered a judgment again ordering Blouin to pay $12,000 to the estate together with interest from December 4, 1974, and disallowing certain attorneys' fees.

On this appeal, Blouin challenges the power of the Probate Court to amend the inventory appraisal, the court's preclusion of the issue of the $28,000 fair value of the Dairy Queen real property, and the propriety of the Probate Court's order to pay the additional $12,000 to the estate. Blouin also asserts that the daughters are estopped to attack the sale of the Dairy Queen, objects to the disallowance of certain attorneys' fees, and alleges error in the Probate Court's refusal to allow him to amend his pretrial memorandum. We affirm the judgment of the Probate Court.

## II.

■ As a preliminary matter, Blouin urges us to review the evidence directly without deference to the findings of the Probate Court. An independent evaluation of the evidence is unwarranted. The fact that on remand the matter was submitted on a written record does not entitle a party to a trial de novo on appellate review. *See Anderson v. Bessemer City*, —— U.S. ——, —— ——, 105 S.Ct. 1504, 1509–1513, 84 L.Ed.2d 518, —— —— (1985); *Cushing v. State*, 434 A.2d 486, 493–94 (Me.1981). We will uphold the findings of the Probate Court unless they are clearly erroneous. *Estate of Mitchell*, 443 A.2d 961, 963 (Me. 1982).

## III.

■ Blouin claims that the Probate Court exceeded its jurisdiction by amending the warrant and inventory. He declares there is no statute, rule, or precedent in Maine authorizing such an action. A duly sworn and filed inventory is considered prima facie evidence of the amount of the estate that came into the executor's hands; it is not, however, conclusive either for or against a personal representative, and remains open to denial or explanation regarding title or value. *Jones v. Grindal*, 121 Me. 348, 352, 117 A. 308, 310 (1922).

---

**2.** 18–A M.R.S.A. § 8–401(b)(2) (1981) provides:
  (b) Except as provided elsewhere in this Code, on the effective date of this Code:
    ....
  (2) The Code applies to any proceedings in Court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this Code.

**3.** 4 M.R.S.A. § 401 (1979), which vested the Superior Court with appellate jurisdiction over probate matters as the Supreme Court of Probate, was repealed by the enactment of the Probate Code. P.L.1979, ch. 540, § 7–B (effective Jan. 1, 1981). The Law Court, which had concurrent jurisdiction in certain circumstances under section 401, now has exclusive jurisdiction over appeals from the probate courts. 18–A M.R.S.A. § 1–308 (1981).

■ The will of Lucien Blouin directed and authorized the executor to sell his real estate without petitioning the Probate Court for a license. This provision thus relieved the executor from securing the court's approval of the inventory before he could sell the property. *See* M.R.Prob.Ct. VII, 151 Me. 511, 513 (1956) (repealed 1981). The executor was not thereby discharged, however, from his fiduciary duty to administer the estate impartially and in good faith, nor was he removed from the supervisory power of the Probate Court.

■ We recognize that the appropriate time for the daughters to have challenged the inventory was at the time of accounting. *See* Haskell, *Inventories and Appraisals in Maine Probate Practice*, 5 Peabody L.Rev. 38, 40 (1940). In these circumstances, however, we find it unavailing to dwell on this technicality. The executor failed to file the inventory within three months of his appointment, as required by statute. 18 M.R.S.A. § 1801 (1965) (repealed 1981). The daughters filed their objections to the appraisal a year before the inventory was filed.

We find this opposition sufficient to invoke the intervention of the Probate Court. Having before us no record of the June 29, 1976, hearing on the inventory at which the Probate Court determined the value of the property to be $28,000, we assume the proceeding was fair and all parties had the opportunity to fully litigate their interests. We therefore uphold the Probate·Court's amendment of the inventory.

■ Blouin contests the Probate Court's order barring him from raising the issue of the fair value of the Dairy Queen property based on his failure to appeal the Probate Court order fixing the value at $28,000. He contends that by obtaining a de novo review by our remand to the Supreme Court of Probate, he was entitled to a de novo adjudication of this issue. We disagree.

In *Blouin I* we held that those issues decided in the Supreme Court of Probate's judgment from which no appeal was taken were final and would not be before that court on remand. 430 A.2d at 825. We noted that Blouin had never challenged the dollar value set on the property by the Probate Court and that the issue was not then before us. *Id.* at 824. Accordingly, there was no error in the Probate Court's order precluding consideration of the property's value on remand.

■ Blouin alleges that the Probate Court erred in ordering him to pay the estate $12,000, contending that by paying the estate $16,000 for the Dairy Queen property, he was complying with the intent of the testator. We recognize that the terms of the will authorized the sale to him at the property's "appraised value." From an examination of the will, however, we agree with the Probate Court that "appraised value" is the functional equivalent of "fair value."

■ The will evinces the testator's intention to treat his children equally. To interpret "appraised value" as anything but fair value would result in Blouin's benefitting from the sale at the expense of the other beneficiaries. After hearing, the Probate Court determined the fair value of the property to be $28,000, which we have held conclusive. The original appraisal of $16,-000 represents only 57% of the court's determination of fair value. The fundamental rule governing appraisals is that they must be fair and just. G. Wilson, *Maine Probate Law* 139–40 (1896). We affirm the court's order directing Blouin to remit an additional $12,000 to the estate.

■ Blouin also protests that the Probate Court relied on evidence not included in the agreed-upon record before it. Despite the court's reference in its decision to the two additional appraisals authorized by the court in 1975, we find unconvincing the suggestion that the appraisals influenced the court's determination. The court clearly stated in its order that it considered the issue of the fair value of the Dairy Queen

property to have been conclusively determined by the order of June 29, 1976.

## IV.

■■■ Blouin claims that by accepting their share of the proceeds of the sale of the Dairy Queen, the daughters are estopped to deny the validity of the transaction. By the retention of the benefits of the sale, Blouin argues, the daughters are absolutely precluded from attacking any aspect of the sale. We reject this contention.

Although in accordance with the terms of the will, the executor's sale of the Dairy Queen property to himself was not a transfer at arm's length. At the time the daughters received their share of the proceeds in December 1974, they were unaware that the fair market value of the property was greater than the amount Blouin had paid the estate. They objected in March 1975 to the yet unfiled warrant and inventory when they became aware of the situation. Charged with representing the interests of the beneficiaries, the executor cannot invoke an equitable doctrine to bar their claim against his administration of their father's estate.

## V.

■■■ Blouin objects to the Probate Court's disallowance of certain attorneys' fees incurred in his defense against the daughters' appeal to the Supreme Court of Probate. He also claims that the Probate Court erred in failing to apply the Probate Code in its consideration of the counsel fees.[4] In general, the allowance of costs in contested probate cases lies within the discretion of a probate court, as authorized by statute. *Estate of Brideau,* 458 A.2d 745, 747 (Me.1983). We affirm the judgment of the Probate Court that the unitemized bills submitted for allowance were insufficiently definite for the court to evaluate the legal services rendered. Furthermore, because the fees at issue were submitted for services performed before 1981, the Probate Court properly applied pre-code law in its determination.[5]

## VI.

■■■ Finally, Blouin complains that the Probate Court erred in denying his motion to amend his pretrial memorandum and the court's pretrial order. Rule 16 of the Maine Rules of Probate Procedure provides that a pretrial order "when entered controls the subsequent course of the proceeding, unless modified at the trial to prevent manifest injustice."

Blouin sought to add to the issues for trial whether the daughters were barred by res judicata from questioning his administration by their failure to appeal the Probate Court's denial of their petition for his removal. There is no merit in this argument. A petition for removal is in the nature of a motion, to which the doctrine of res judicata does not strictly apply. *Mar-*

**4.** The new Code section, which became effective January 1, 1981, provides:

> If any personal representative ... defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred.

18-A M.R.S.A. § 3-720 (1981); *see id.* at § 1-601 (costs including attorneys' fees may be allowed out of the estate to either party in contested cases as justice requires).

> The statute in force before 1981 provided:
> In all contested cases ... costs may be allowed ... to either or both parties, to be paid out of the estate in controversy, as justice requires.

18 M.R.S.A. § 551 (1965) (repealed 1981).

**5.** The section governing the Code's effective date provides in part:

> (b) Except as provided elsewhere in this Code, on the effective date of this Code:
> ....
> (4) An act done before the effective date in any proceeding and any accrued right is not impaired by this Code. If a right is acquired, extinguished or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before the effective date, the provisions shall remain in force with respect to that right.

18-A M.R.S.A. § 8-401(b)(4) (1981).

*tin C. McCluskey,* 116 Me. 212, 214, 100 A. 977, 978 (1917). "It does not finally adjudicate the rights of creditors or heirs or finally dispose of the case." *Id.* The Probate Court did not err in refusing Blouin's motion to amend the pretrial order.

The entry is:

Judgment affirmed.

All concurring.